IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LAWRENCE LEE MCLAIN,                           2:15-CV-00024-BR

          Plaintiff,                           OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

          Defendant.


LISA R. J. PORTER
JP Law PC
5200 S.W. Meadows Rd
Suite 150
Lake Oswego, OR 97035
(503) 245-6309

          Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**HEATHER L. GRIFFITH**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3709

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Lawrence Lee McLain seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

    Plaintiff filed an application for SSI on June 23, 2011, and alleged a disability onset date of May 24, 2011.[1]  Tr. 305.[2]  His

---

    [1] Plaintiff provided an alleged onset date of January 1, 2007, in his application, but at the hearing the ALJ accepted Plaintiff's request to amend his alleged onset date to May 24, 2011.  Tr. 23, 47.

    [2] Citations to the official transcript of record filed by the Commissioner on May 22, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on January 17, 2013.  Tr. 42-90.  At the hearing Plaintiff, his father, and a vocational expert (VE) testified.  Plaintiff was represented by an attorney.

On April 5, 2013, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 23-35.  On November 10, 2014, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

**BACKGROUND**

Plaintiff was born on October 12, 1973, and was 39 years old at the time of the hearing.  Tr. 303.  Plaintiff has a GED. Tr. 354.  He has past relevant work experience as a bicycle assembler, a carpenter's apprentice, a customer-service clerk, and a telemarketer.  Tr. 33.

Plaintiff alleges disability due to obsessive compulsive disorder (OCD), anxiety, a head injury, and "feet and leg deformities."  Tr. 352.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the

3 - OPINION AND ORDER

medical evidence.  *See* Tr. 29-32.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d

at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful

5 - OPINION AND ORDER

activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,

6 - OPINION AND ORDER

659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

### ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his May 24, 2011, amended alleged onset date.  Tr. 25.

At Step Two the ALJ found Plaintiff has the following severe

impairments:  "leg length discrepancy," asthma, hepatitis C,
bipolar disorder, OCD, pain disorder, and attention deficit
disorder.  Tr. 26.  The ALJ found Plaintiff's "alleged disability
arising, in part, from a head injury" to be nonsevere.  Tr. 26.

     At Step Three the ALJ concluded Plaintiff's impairments do
not meet or equal the criteria for any Listed Impairment from 20
C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff
has the RFC to perform "a range of light work."  Tr. 27.  The ALJ
also found Plaintiff is able to lift and to carry 20 pounds
occasionally and ten pounds frequently; to stand and to walk for
four hours in an eight-hour work day; to sit for six hours in an
eight-hour work day with a "sit/stand option in 30-minute
increments"; occasionally to operate foot controls; to climb
ramps, stairs, ladders, ropes, and scaffolds; to balance; to
stoop; and to crouch.  Tr. 27-28.  The ALJ found Plaintiff is
rarely able to knee or to crawl and that Plaintiff must avoid
exposure to irritants such as fumes, odors, dusts, gases, poorly
ventilated areas, hazardous machinery, unprotected heights, and
"operational control of moving machinery."  Tr. 28.  The ALJ
found Plaintiff is able to perform simple, routine, and
repetitive tasks "consisting of one or two steps."  Tr. 28.  The
ALJ found Plaintiff "is able to work in a low stress environment,
defined as only occasional decision-making, changes in work
setting, and judgment required on the job," and he must not have

any interaction with the general public.  Tr. 28.  Finally, the ALJ found Plaintiff "is able to have superficial interaction with a small group of co-workers, but cannot perform tandem tasks."  Tr. 28.

At Step Four the ALJ concluded Plaintiff is unable to perform his past relevant work.  Tr. 33.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 33.  Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly rejected Plaintiff's testimony; (2) gave "little weight" to the testimony of Plaintiff's father, Michael McLain; (3) gave "little weight" to the opinion of Plaintiff's treating therapist, Jeff Harmon, L.P.C.; (4) gave "some weight" to the opinion of Plaintiff's examining psychologist, Kenneth Dudley, Ph.D.; and (5) failed to include all of Plaintiff's restrictions in her evaluation of Plaintiff's RFC.

**I.   The ALJ gave clear and convincing reasons for partially rejecting Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when she failed to give clear and convincing reasons for partially rejecting Plaintiff's testimony at the January 2013 hearing.

In *Cotton v. Bowen* the Ninth Circuit established two

9 - OPINION AND ORDER

requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the March 2013 hearing Plaintiff testified he has suffered "constant, chronic [pain], 24 hours a day" in his back, and, as a result, he is not able to sit or to stand for more than an hour.  Tr. 50-51.  Plaintiff stated "bending down and lifting is very difficult," and he has had nerve damage in his hands for ten years.  Tr. 58.  Plaintiff also testified he survived a 120-foot fall in "the mid-90s" that caused several mental problems.

Tr. 63.   Plaintiff testified he cannot go into stores if there
are "too many people" in the store.   Plaintiff stated he cannot
stay focused enough to read or to do paperwork.   Plaintiff
testified he has suicidal thoughts that have become worse in the
past year, and, as a result, he has been hospitalized three times
"this year."   Tr. 68.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause some of the
alleged symptoms," but Plaintiff's testimony "concerning the
intensity, persistence and limiting effects of [his] symptoms are
not entirely credible."   Tr. 32.   The ALJ noted Plaintiff
reported to examining physician, Michael Rushton, D.P.M., on
May 23, 2011, with a joint that was "painful, reddened and
swollen."   Tr. 485.   Plaintiff stated he was having difficulty
with his daily activities due to "the sharp pain, which at times
[was] excruciating."   Tr. 485.   Dr. Rushton diagnosed Plaintiff
with gout, "defer[red] a joint tap," and discussed diet
recommendations with Plaintiff.   Tr. 486.   On June 8, 2011,
Plaintiff was seen by Dr. Rushton regarding joint pain, and
Dr. Rushton again advised Plaintiff about his diet and declined
to do a joint tap.   Tr. 465-66.   On June 27, 2011, Plaintiff was
seen by Aaron Long, PA-C, seeking a handicap parking permit
related to his gout and right foot discomfort.   Plaintiff,
however, told PA-C Long that his "foot is much better on gout

meds" and "admit[ted] he can easily walk into stores . . .
because the distance is short." Tr. 563. Plaintiff noted he had
"some difficulty getting the L leg up over logs in the woods at
times," but PA-C Long noted that "would make it difficult to
justify a parking permit." Tr. 563. Ultimately PA-C Long noted
Plaintiff "agree[d] that he ambulates effectively today and does
not need a sticker at this point. If it should get to this point
and the need is legitimate I will gladly assist." Tr. 563.

The ALJ noted throughout Plaintiff's weekly counseling
sessions in 2011 and 2012 that Plaintiff reported varying levels
of anxiety, anger, and/or obsessive thoughts. Plaintiff's
treating counselor, Jeff Harman, L.P.C., however, consistently
assessed Plaintiff with GAF[3] scores in the low 60s and high 50s[4]

---

[3] Although the fifth edition of the *Diagnostic and
Statistical Manual of Mental Disorders* issued May 27, 2013,
abandoned the GAF scale in favor of standardized assessments for
symptom severity, diagnostic severity, and disability (*see
Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V)
16 (5th ed. 2013)), at the time of Plaintiff's assessment and the
ALJ's opinion the GAF scale was used to report a clinician's
judgment of the patient's overall level of functioning on a scale
of 1 to 100 (*see Diagnostic and Statistical Manual of Mental
Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)).

[4] A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat
affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school
functioning (*e.g.*, few friends, conflicts with peers or co-
workers). A GAF of 61-70 indicates "[s]ome mild symptoms (*e.g.*,
depressed mood and mild insomnia) or some difficulty in social,
occupational, or school functioning (*e.g.*, occasional truancy, or
theft within the household), but generally functioning pretty
well, has some meaningful interpersonal relationships."
*Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV)

from June 2011 through July 2012.  In addition, although Plaintiff testified he had been hospitalized for mental-health reasons three times in the year before the hearing, the record reflects only one hospitalization that occurred in September 2012.  From September 2012 through November 2012 Plaintiff's mood continued to fluctuate, but Counselor Harman never assessed Plaintiff with more than moderate symptoms.

On this record the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was only partially credible.  The Court, therefore, concludes the ALJ did not err when she rejected Plaintiff's testimony in part.

**II.  The ALJ did not err when she gave little weight to the November 2012 opinion of treating counselor Jeff Harman.**

Plaintiff contends the ALJ erred when she gave little weight to the November 2012 opinion of Counselor Jeff Harman.  On November 26, 2012, Counselor Harman completed a medical-impairment questionnaire in which he reported Plaintiff suffered from several mental symptoms including suicidal thoughts, impairment of impulse control, generalized anxiety, difficulty concentrating, persistent disturbances in mood, recurrent obsessions, "intense and unstable interpersonal relationships," sleep disturbance, and "easy distractability."  Tr. 752.

---

31-34 (4th ed. 2000).

Counselor Harman declined to specifically assess Plaintiff's
"mental abilities and aptitudes needed to do unskilled work" or
Plaintiff's functional limitations.  Tr. 756-57.  Nevertheless,
Counselor Harman opined Plaintiff "would experience substantial
difficulty with stamina, pain or fatigue if [he] was working
. . . eight hours a day, at the light or sedentary levels of
exertion" and had a "very poor" ability "to work 8 hours a day,
40 hours a week, and maintain a normal work pace."  Tr. 754.
Counselor Harman also reported Plaintiff would have "substantial
difficulty getting along appropriately with members of the
public" and in "getting along with supervisors or co-workers."
Tr. 755.  Counselor Harman opined Plaintiff would be absent from
work more than four times per month.  Tr. 755.  Finally,
Counselor Harman noted Plaintiff had suffered "three episodes of
decompensation within 12 months, each at least two weeks long."
Tr. 758.

    Medical sources are divided into two categories:
"acceptable" and "not acceptable."  20 C.F.R. § 416.902.
Acceptable medical sources include licensed physicians and
psychologists.  20 C.F.R. § 416.902.  Medical sources classified
as "not acceptable" include, but are not limited to, nurse
practitioners, therapists, licensed clinical social workers, and
chiropractors.  SSR 06-03p, at *2.  Factors the ALJ should
consider when determining the weight to give an opinion from

those not acceptable sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise.  SSR 06-03p, at *4.  The ALJ must explain the weight assigned to not acceptable medical sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

The ALJ rejected Counselor Harman's opinion on the ground that it is inconsistent with his treatment notes and the medical record.  For example, although Counselor Harman stated Plaintiff had suffered three episodes of decompensation within 12 months, each at least two weeks long, Counselor Harman consistently assessed Plaintiff with GAF scores in the low 60s and high 50s from June 2011 through July 2012.  From September 2012 through November 2012 Plaintiff's mood continued to fluctuate, but Counselor Harman never assessed Plaintiff with more than moderate symptoms.  In addition, the record reflects Plaintiff was hospitalized for a short period only once because of mental-health issues.

On this record the Court concludes the ALJ did not err when she gave little weight to Counselor Harman's November 2012

opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not err when she gave only "some weight" to the opinion of Plaintiff's examining psychologist, Dr. Dudley.**

Plaintiff asserts the ALJ erred when he gave only "some weight" to the January 6, 2013, opinion of Dr. Dudley.

On December 31, 2012, Dr. Dudley conducted a pyscho-diagnostic examination of Plaintiff and found Plaintiff "endorsed the supermajority of symptoms presented, at time with some potential for symptoms exaggeration." Tr. 745. Dr. Dudley noted Plaintiff did not have any "difficulty with the ability to read social and nonverbal cues" and "minimal difficulty in giving additional information or details to his responses." Tr. 745. Dr. Dudley reported Plaintiff's mental-status examination demonstrated Plaintiff had average reasoning ability, his intellectual capacity was in the low-average range, and his attention and concentration were in the low-average range. Tr. 746. Dr. Dudley noted the record did not contain a neuropsychological evaluation, and he recommended "some form of testing occur to evaluate [Plaintiff's] level of functioning across cognitive domains including language ability, memory, attention and other executive functioning areas." Tr. 749. Dr. Dudley also opined Plaintiff was able to "recall and act on simply commands (1-2 steps) with no anticipated impairment," but

16 - OPINION AND ORDER

he would likely have "a severe level of impairment [in his
ability to sustain concentration and attention] in most
situations due to mood, anxiety and social deficits."  Tr. 749.
Dr. Dudley opined Plaintiff "would be expected to be able to
maintain a brief level of [social interaction], [but] his ability
to sustain these [*sic*] over the course of a typical work day or
across a typical work week would be impaired."  Tr. 750.
Specifically, Plaintiff

> would be able to manage interaction with a
> supervisor/manager in regards to receiving
> directions and requesting information, but would
> not be able to manage ongoing demands of
> interaction with the general public.

Tr. 750.  Finally, Dr. Dudley opined Plaintiff would have
"minimal impairment in written communication.  Verbal
communication was unimpaired."  Tr. 750.

    An ALJ may reject an examining physician's opinion when it
is inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record."  *Thomas v. Barnhart,* 278 F.3d 947, 957
(9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751
(9th Cir. 1989)).  When the medical opinion of an examining
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at
957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

17 - OPINION AND ORDER

The ALJ gave some weight to Dr. Dudley's January 6, 2013, opinion. For example, the ALJ found Dr. Dudley's opinions regarding Plaintiff's inability to deal with the general public and Plaintiff's ability to maintain a brief level of interaction with a supervisor or manager are supported by the record. The ALJ also found Dr. Dudley's opinion regarding Plaintiff's ability to recall and to act only on simple 1-2 step instructions was supported by the record. The ALJ, therefore, incorporated those restrictions into Plaintiff's RFC. The ALJ, however, rejected Dr. Dudley's opinion that Plaintiff is unable to sustain concentration and/or social functioning over the course of a typical workday or work week because it was based, in part, on Plaintiff's self report and Dr. Dudley had noted Plaintiff "endorsed the supermajority of symptoms presented . . . with some potential for symptoms exaggeration." In addition, the ALJ noted Counselor Harman reported over the course of more than a year that Plaintiff's symptoms fluctuated but Counselor Harmon never assessed more than moderate limitations.

On this record the Court concludes the ALJ did not err when she gave only some weight to the January 6, 2013, opinion of Dr. Dudley because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**IV.  The ALJ did not err when she gave little weight to the testimony of Plaintiff's father, Michael McLain.**

At the hearing on January 17, 2013, Plaintiff's father

18 - OPINION AND ORDER

testified the depth of Plaintiff's depression had become more severe in the "past couple of years." Tr. 73. Michael McLain stated Plaintiff suffers from "total hopelessness" and is "helpless." Tr. 73. Michael McLain testified in the year before the hearing that Plaintiff "gained most of his strength back, but . . . his problem is depression." Tr. 74. Michael McLain also stated Plaintiff cannot get out of bed or go to work on one of Plaintiff's "bad days," and Plaintiff does not have "any control over how he's going to feel from day to day." Tr. 75. Michael McLain testified Plaintiff's condition is getting worse, and "for days he won't even leave the cabin because . . . [of] anxiety." Tr. 76-77.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

The ALJ gave little weight to Michael McLain's testimony on the ground that it was not supported by the medical evidence such

19 - OPINION AND ORDER

as Counselor Harman's assessments throughout 2011 and 2012 that Plaintiff did not suffer from more than moderate symptoms and Dr. Dudley's opinion.

The Court concludes on this record that the ALJ did not err when she gave little weight to the testimony of Michael McLain because the ALJ gave reasons germane the witness for doing so.

**V.    The ALJ did not err in her assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ erred in her assessment of Plaintiff's RFC because the ALJ failed to include Plaintiff's limitations set out Plaintiff's testimony and in the opinions of Counselor Harman and Dr. Dudley.

Because the Court has found the ALJ properly rejected Plaintiff's testimony in part, properly gave little weight to Counselor Harman's opinion, and properly gave some weight to the opinion of Dr. Dudley, the Court concludes the ALJ did not err when she did not consider all of the limitations included in Plaintiff's testimony or in the opinions of Counselor Harmon and Dr. Dudley when she assessed Plaintiff's RFC.

<u>**CONCLUSION**</u>

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

      IT IS SO ORDERED.

      DATED this 8th day of January, 2016.


                              /s/ Anna J. Brown

                              _____
                              ANNA J. BROWN
                              United States District Judge